UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARILYNN LEOLA MARSHALL,

    Plaintiff,

v.	Case No.:  3:22-cv-1402-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Marilynn Leola Marshall seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.**    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on October 2, 2013, alleging disability beginning on August 23, 2013. (Tr. 78, 159-65). The applications were denied initially and on reconsideration. (Tr. 78, 91). Plaintiff requested a hearing, and on April 11, 2016, a hearing was held before Administrative

Law Judge Kelley Fitzgerald ("ALJ"). (Tr. 48-66). On June 22, 2016, the ALJ entered a decision finding Plaintiff not under a disability from August 23, 2013, through the date of the decision. (Tr. 20-32).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on June 1, 2017. (Tr. 6-10). Plaintiff appealed the decision to the United States District Court and on March 18, 2019, the District Court reversed the Commissioner's final decision and remanded the matter to:

(A) Reconsider the opinions of treating physician Alex Gonzalez, M.D. in the Disability Impairment Questionnaire (including the opined functional limitations), assign the appropriate weight to such opinions, and explain the reasoning behind the weight assigned;

(B) If appropriate, reconsider the remaining opinions of Dr. Gonzalez;

(C) If appropriate, reconsider the opinions of Howard Shapiro, M.D. and Paul Alfino, M.D.;

(D) If appropriate, reconsider Plaintiff's fibromyalgia at step three of the sequential inquiry; and

(E) Take such other action as may be necessary to resolve this claim properly.

(Tr. 994). Based on the District Court's decision, the Appeals Council entered an Order remanding the case to the Administrative Judge and vacating the June 22, 2016 decision. (Tr. 1020-23).

On remand, the ALJ held another hearing on June 2, 2020. (Tr. 920-947). On July 1, 2020, the ALJ entered a decision finding Plaintiff not under a disability from August 23, 2013, the alleged onset date, through December 31, 2018, the date last inured. (Tr. 892-910). Plaintiff requested review of this decision, but on November 21, 2022, the Appeals Council found no reason under its rules to assume jurisdiction based on the written exceptions submitted. (Tr. 882-87). Plaintiff filed a Complaint (Doc. 1) on December 20, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

D.      **Summary of ALJ's Decision**

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act on December 31, 2018. (Tr. 894). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 23, 2013, through her date last insured of December 31, 2018. (Tr. 895). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "polycystic kidney disease, G6PD deficiency, diabetes mellitus type II, hypertension, anemia secondary to renal disease, stage three renal disease, fibromyalgia, osteoarthritis, and residuals from a cerebrovascular accident." (Tr. 895). At step three, the ALJ found that through the date last insured, Plaintiff did not

have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 895).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light or sedentary work as defined in 20 [C.F.R. §] 404.1567 (a) or (b) except with no more than frequent climbing ramps and stairs, stooping, kneeling, crouching, or crawling; no balancing or climbing of ladders, ropes, and scaffolds; and no concentrated exposure to extreme heat, extreme cold, wetness, vibration, and hazards (i.e. machinery, heights. etc.).

(Tr. 896).

At step four, the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a bookkeeper. (Tr. 909). The ALJ found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 909). The ALJ concluded that Plaintiff had not been under a disability from August 23, 2013, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 910).

## II.   Analysis

On appeal, Plaintiff raises four issues:

(1)   Whether the ALJ erred in finding Plaintiff could perform her past relevant work as a bookkeeper as generally performed, given that the vocational expert testified that Plaintiff's past relevant work could be

classified as a bookkeeper or as an accounting clerk and, thus, the ALJ should have considered the job as composite work, which cannot be considered at step four as generally performed;

(2)   Whether the ALJ circumvented the Medical-Vocational Rule (the "Grid" Rule) 202.06;

(3)   Whether the ALJ properly evaluated Plaintiff's fibromyalgia given that the ALJ found this impairment to be severe at step two, but failed to analyze this impairment at step three and failed to explain how this impairment affects her RFC assessment; and

(4)   Whether the ALJ properly considered the effect of absenteeism on Plaintiff's ability to work.

### A.   Past Relevant Work

Plaintiff states that the ALJ found Plaintiff able to perform her past relevant work as a bookkeeper, as generally performed. (Doc. 17, p. 9). Plaintiff claims the vocational expert specified that the bookkeeper job also includes some of the job duties of accounting clerk and argues that the ALJ should have found that Plaintiff's past relevant work was a composite job. (Doc. 17, p. 9). Plaintiff then argues that because Plaintiff's past composite job does not have an equivalent in the DOT (*Dictionary of Occupational Titles*), the ALJ should not have considered this job as generally performed. (Doc. 17, p. 10).

At the fourth step of the sequential evaluation, the burden lies with Plaintiff to show that she cannot return to her past relevant work as she actually performed it or as it is performed in the general economy. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013); *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir.

2007); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). Even though the burden lies with Plaintiff, the ALJ must consider all of the duties of Plaintiff's past relevant work and evaluate Plaintiff's ability to perform that work despite her impairments. *Levie*, 514 F. App'x at 830. Further, at step four, an ALJ *may* use a vocational expert in determining whether a claimant can return to her past relevant work, but a vocational expert is not required. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (vocational expert's testimony may be required at a step five determination for claimant's ability to perform other work, but not at a step four determination for claimant's ability to return to past work); 20 C.F.R. § 404.1560(b)(2).

Past relevant work is defined as work that a claimant had done within the past 15 years, that was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1). To determine past relevant work, the ALJ will ask a claimant for information about the work she did in the past. 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 416.960(b)(2). A claimant is the primary source for vocational documentation, and statements by a claimant regarding past work as she actually performed it are "generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3; *see also Dukes v. Saul*, No. 8:18-

cv-2553-T-SPF, 2020 WL 755393, at *4 (M.D. Fla. Feb. 14, 2020) ("In determining whether a claimant can perform past relevant work as actually performed, the ALJ may rely on the claimant's testimony. *Dukes*, 2020 WL 755393, at *4 (citing 20 C.F.R. § 404.1560(b)(2))). Importantly, Plaintiff has the burden of showing that her impairments prevent her from returning to her past relevant work as she actually performed it or as it is generally performed in the national economy. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work.")).

A composite job has "'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (quoting SSR 82-61 at *2). For past relevant work to qualify as a composite job, the main duties of the past relevant work must include multiple DOT occupations as described by the plaintiff. *Id.* (citing Program Operations Manual System ("POMS") DI 25005.020). "When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." *Id.* (citing SSR 82-61 at *2).

At the hearing, the ALJ asked the vocational expert to classify Plaintiff's past relevant work. (Tr. 936-37). The vocational expert identified one of Plaintiff's past relevant jobs as a bookkeeper, DOT # 201.382-014, sedentary, and SVP 6. (Tr. 937).[1] The ALJ informed the vocational expert that at the prior hearing, the vocational expert identified Plaintiff past relevant work as accounting clerk, DOT 216.482-010, sedentary, with an SVP of 5. (Tr. 937). The vocational expert explained:

> Well, certainly, the bookkeeper and the accounting clerk are very similar titles. I think the accounting clerk is a little broader in its duties. But it also may perform accounts payable, accounts receivable duties. I think, you know, I have to look at both duties, and sometimes, it's an issue of which one is most appropriate. I'm listening closely to the testimony of the essential functions for what the work primarily consisted of. And I heard accounts receivable and accounts payable. And I think that's what swayed me to use the bookkeeper position, Judge. I certainly would not object to accounting clerk. It is another title that would satisfy the classification.

(Tr. 937-38).

In the decision, the ALJ acknowledged:

> [T]the vocational expert confirmed that the claimant has past work as a Bookkeeper, and testified that this position was a more appropriate description/title pursuant to the Dictionary of Occupational Titles, rather than the previously noted position as an Accounting Clerk that was identified at the April 2016 hearing. Further, the vocational expert testified that the demands of the claimant's past relevant work as a Bookkeeper does not exceed the residual functional capacity as the

---

[1] The other job the vocational expert identified was correction officer. (Tr. 937). This classification is not at issue.

>occupation is customarily and normally performed in the national economy.

(Tr. 910).

Plaintiff failed to meet her burden of showing that her past relevant work was a composite job. The vocational expert testified that Plaintiff's duties at her past job fell within the duties of a bookkeeper under the DOT. The vocational expert acknowledged that the duties of a bookkeeper and an accounting clerk are somewhat similar, but after considering all the evidence, the vocational expert determined that Plaintiff's past relevant work was as a bookkeeper. (Tr. 937-38). After Plaintiff then testified to additional job duties, the ALJ explained that a person with Plaintiff's limitations could perform this job as generally performed in the national economy, not as Plaintiff actually performed it. (Tr. 938-39). The vocational expert made no representation that Plaintiff's past relevant work was a composite job, he simply explained that the duties of that job fit more closely with a bookkeeper position rather than and accounting clerk position. Substantial evidence supports the ALJ's findings on Plaintiff's past relevant work.

### B. Medical-Vocational Rule (the "Grid" rule) 202.06

Plaintiff argues that the ALJ circumvented the Grids because she failed to proceed to step five of the sequential evaluation. (Doc. 17, p. 11). Plaintiff claims that as argued above, the ALJ did not properly find that Plaintiff could perform her past relevant work because it was a composite job, and the ALJ should have

proceeded to step five. (Doc. 17, p. 11). Then at step five, the ALJ could not have found Plaintiff had sufficient transferable skills to any additional occupations and should have been directed to find Plaintiff disabled. As a result, Plaintiff contends the ALJ circumvented Grid Rule 202.06.

Plaintiff relies on a false premise. As explained above, the ALJ properly considered Plaintiff's past relevant work and substantial evidence supports her finding that Plaintiff could return to her past job as a bookkeeper as generally performed. Because the ALJ found Plaintiff able to perform her past relevant work, the ALJ properly found Plaintiff not disabled and had no need to proceed to step five of the sequential evaluation. *See* 20 C.F.R. § 404.1520(f). Thus, the ALJ did not circumvent Grid Rule 202.06.

### C. Fibromyalgia

Plaintiff argues that the ALJ did not properly assess Plaintiff's fibromyalgia condition. (Doc. 17, p. 12). Plaintiff contends that while the ALJ found Plaintiff's fibromyalgia a severe impairment at step two, the ALJ failed to consider it at step three of the sequential evaluation as the District Court directed on remand, and articulated no limitations in the RFC based on this severe impairment. (Doc. 17, p. 13-16).

At step two in the decision, the ALJ found Plaintiff's fibromyalgia condition a severe impairment. (Tr. 895). At step three, the ALJ did not mention fibromyalgia

when considering whether Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of a listing. (Tr. 895-96).

At step three, an ALJ has to determine whether a claimant's alleged impairments meet or equal a listing. *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1008 (11th Cir. 2016). "The ALJ need not, however, specifically enumerate the Listings under which she is evaluating the claimant's condition in Step Three, so long as the ALJ's finding is implicit in her decision." *Id.* (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). An ALJ must consider the combined effects of all of a plaintiff's impairments when evaluating disability. *Id.* (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).

In the District Court's March 2019 Opinion and Order, the Court remanded the action on other grounds, but also directed the Commissioner "if appropriate," to reconsider Plaintiff's fibromyalgia at step three of the sequential inquiry. (Tr. 994). "If appropriate" is not a clear direction to the Commissioner, but rather leaves the decision to the Commissioner's discretion. And while the ALJ did not specifically mention Plaintiff's fibromyalgia at step three, she considered it throughout the remaining opinion and thereby made an implicit finding that Plaintiff's fibromyalgia did not meet or equal a listing. The ALJ noted that in June and July 2014, Plaintiff was assessed with possible fibromyalgia. (Tr. 900-901). In December 2014, Plaintiff complained of joint and muscle pain aggravated by activity. (Tr. 901). Given the

possibility that Plaintiff suffered from fibromyalgia, her physician started her on Cymbalta. (Tr. 901). In late 2015, Plaintiff's rheumatologist noted that Plaintiff's fibromyalgia was doing well on her current treatment of Tylenol and Cymbalta. (Tr. 904). Indeed, the rheumatologist recommended no further rheumatology visits and further recommended Plaintiff follow-up with her treating primary care provider for treatment of fibromyalgia. (Tr. 904). Thus, even if the ALJ erred in not specifically considering Plaintiff's fibromyalgia at step three, the error is harmless because the ALJ considered this impairment throughout the decision and also considered the combined effects of all of Plaintiff's impairments when evaluating her disability.

Plaintiff also argues that because the ALJ found fibromyalgia a severe impairment at step two, she erred in not including limitations in Plaintiff's RFC for this impairment. (Doc. 15-16). In the decision, the ALJ acknowledged that by definition a medically determinable impairment significantly limits the ability to perform basic work activities. (Tr. 893); *see also Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010). While the ALJ found Plaintiff's fibromyalgia a severe impairment, she explained in the decision that Plaintiff was doing well on her current regimen of Tylenol and Cymbalta. (Tr. 879-81; 904). Plaintiff was doing so well that her rheumatologist determined that her condition could be handled by her primary care provider. (Tr. 881, 904). Due to her impairments, the ALJ restricted Plaintiff to the light or sedentary exertional level for work. (Tr. 909). Thus, the ALJ

concluded that Plaintiff had limitations due to her severe impairments, including fibromyalgia, considered Plaintiff's medical condition as a whole, and performed a proper RFC function analysis. (Tr. 909); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Substantial evidence supports the ALJ's RFC determination.

### D.     Absenteeism

Plaintiff asserts that between the alleged onset date and the date last insured, Plaintiff had at least 70 days of doctor or hospital visits, including 17 days of multi-day hospital stays. (Doc. 17, p. 18). Plaintiff cites the vocational expert's testimony from the April 2016 hearing, who testified that employers only permit no more than one absence a month, which includes coming to work late or leaving early. (Doc. 17, p. 18). Plaintiff argues that she would be absent from work more than permitted based on the amount of doctor and hospital visits. (Doc. 17, p. 18-19).

When determining an RFC, an ALJ must consider all relevant evidence of record, including the effects of treatment, such as the frequency of treatment, duration, and disruption to routine. SSR 96-8P, 1996 WL 374184, *5 (July 2, 1996). Still, "whether the number of medical appointments affects [a plaintiff's] ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v.*

*Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p). Thus, the number of medical appointments a plaintiff attends is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. *Id.* The Eleventh Circuit went further, "[m]oreover, nothing in the record indicates that [the plaintiff] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work." *Id.*

Here, the ALJ thoroughly summarized the medical evidence of record, which included Plaintiff's visits to her doctors and her hospitalizations. (Tr. 896-909). The ALJ specifically determined: "the medical record, the course of conservative treatment, *the frequency and duration of care*, and the claimant's own[] acknowledged abilities (i.e. normal activities of daily living, the ability to take long trips, the ability to perform light and sedentary work, etc.) establish her capacity to perform work within the residual functional capacity." (emphasis added) (Tr. 909). Thus, the ALJ considered both the frequency and duration of care in assessing Plaintiff's ability to obtain employment. If Plaintiff is arguing that the ALJ should have considered Plaintiff's doctor's visits and hospitalization in assessing the RFC, "that inquiry is beyond the scope of our review since it would require reweighing the evidence of [the plaintiff's] capabilities for employment. *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017). Thus, the ALJ considered

Plaintiff's doctor visits and hospitalization in determining whether they would interfere with Plaintiff's ability to obtain work. Substantial evidence supports the ALJ's decision on this issue.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 14, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties